**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ELIDA CORDON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JPMORGAN CHASE & CO.,** | ) | **JURY TRIAL DEMANDED** |
| **a foreign corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiff, Elida Cordon, by and through her attorneys, complains of Defendant, JP Morgan Chase & Co., as follows.

**NATURE OF THE ACTION**

1.      Plaintiff Elida Cordon began her employment with JPMorgan Chase & Co. ("Chase") over a decade ago, in 2006. Beginning as a private relationship banker, Ms. Cordon was great at her job, receiving *only* annual ratings of "exceeds expectations" since 2008. Because of this stellar performance, Ms. Cordon was promoted to become a Private Client Banker. Indeed, her performance was so exceptional that, every year, Ms. Cordon earned "National Achiever" status, meaning she was one of Chase's top 5% performers. Ms. Cordon thrived at Chase. That is, she thrived until she announced her pregnancy and intent to take FMLA leave, and become a working mother. A once amicable, and indeed friendly, relationship with her employer quickly turned sour when Ms. Cordon made every attempt to return to the position in which she flourished, only to be shut out of the system, chastised and questioned for her attempts to return to work, and ultimately, forced out of the job where she had found great success.

## JURISDICTION AND VENUE

2.      Federal question jurisdiction is based upon 28 U.S.C. §1331. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.      Plaintiff has complied with all administrative prerequisites by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). Plaintiff has received from the EEOC her right to sue and has requested the same from the IDHR.

4.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred within this judicial district.

## PARTIES

5.      Plaintiff, Elida Cordon, an individual, (hereinafter "Plaintiff" or "Ms. Cordon"), is a citizen and resident of Cook County, Illinois.

6.      In the calendar year prior to exercising her rights under the FMLA, Plaintiff worked for at least 1250 hours.

7.      Defendant, JPMorgan Chase & Co. (hereinafter "Defendant" or "Chase"), a foreign corporation incorporated in Delaware, regularly conducts business throughout the State of Illinois, including from its branch in Prospect Heights, Illinois.  At all relevant times, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, the Illinois Human Rights Act, and the Family and Medical Leave Act.

8.      At all times relevant hereto, Defendant employed more than fifty (50) employees within a seventy-five (75) mile radius of its Prospect Heights store.

9.      Chase is qualified to do business in the State of Illinois and is doing business in the State of Illinois.

2

## FACTUAL ALLEGATIONS

10.     Plaintiff began her employment with Defendant as a personal relationship banker in January 2006.

11.     Throughout her employment with Defendant, Plaintiff's performance was consistently commended and Defendant admits she was a "high-performing employee" at Chase.

12.     Indeed, since 2008, Ms. Cordon has *only* received overall ratings of "exceeds expectations" on her yearly performance review.

13.     Moreover, Ms. Cordon also was, for eleven years, considered a "National Achiever," which placed her in the top 5% of Chase employees.

14.     Because she thrived and was such a high performer, Ms. Cordon was promoted to the role of a Private Client Banker in 2012.

15.     As a Private Banker, she was tasked with displaying a high level of customer service. She excelled at this, too, and Chase praised her for it, calling her "courteous and professional," "a huge help to the managers," and noted that she is "able to build relationships with clients who trust her and bring over their entire relationship."

16.     This changed once Plaintiff became pregnant and necessitated medical leave.

17.     Upon learning of Ms. Cordon's pregnancy in or around December 2016, Defendant subjected Plaintiff to disparate terms and conditions in her employment, and subjected her to an environment rooted in sex and gender stereotyping.

18.     On or around July 11, 2017, Ms. Cordon exercised her rights under the Family and Medical Leave Act ("FMLA") and under Chase's parental leave policy and went on medical leave in order to give birth to and care for her child.

19.     While out on FMLA, Ms. Cordon's supervisor, Mr. Dela-Riva, harassed Ms.

3

Cordon and dissuaded her from returning, though she made clear that she was absolutely planning to return to the position she excelled in.

20.    Notwithstanding her assurances, Mr. Dela-Riva continued to attempt to dissuade Ms. Cordon from returning from her leave, continuously asking her, "So are u coming back ??? I need to know chica."

21.    In response, Ms. Cordon explained she was still out on FMLA, and that she still had time remaining on her medical leave.

22.    This was not sufficient for Mr. Dela-Riva, who again demanded, "What does that mean," stating to Ms. Cordon, "come on…you know what you want to do chica."

23.    To this, Ms. Cordon explicitly responded, "My intention is to come back."

24.    When she did return to work, on or around November 1, 2017, Ms. Cordon was immediately met with hostility.

25.    Ms. Cordon was actively kept from doing her job, as she was locked out of the system that she required to do her work.

26.    Every day, Ms. Cordon would ask for her access to be reinstated, and every day, Mr. Dela-Riva sent her home.

27.    But he wouldn't just send her home. He would question why, as a new mother, she would work.

28.    Mr. Dela-Riva would question Ms. Cordon as to whether it was difficult to leave her newborn daughter, claiming that his wife's situation – staying home with the baby after giving birth – was the preferable situation for a woman to be in.

29.    Mr. Dela-Riva also told Mr. Cordon that, as a stay at home mom, she could potentially find part-time work so that she could have enough money to get her hair and nails done.

4

He made clear that Chase did not have any part-time work for her.

30.     The day after she attempted to return to work (but was sent home), Mr. Dela-Riva took Ms. Cordon to lunch and further questioned whether she actually wanted to come back to work.

31.     He told Ms. Cordon that he didn't "have to save [her] clients, just [her] job," implying he had, or would, interfere with her working relationship with her clients.

32.     After she gave birth and returned from leave, Mr. Dela-Riva questioned Ms. Cordon's commitment to her work, stating he "want[ed] to make sure you are all here."

33.     Yet, Ms. Cordon's commitment to her job and clients had never wavered.

34.     The only thing that had changed for Ms. Cordon was that she had given birth and required a medical leave.

35.     Ultimately, despite her continued assurances Mr. Dela-Riva, Ms. Cordon was never permitted to return to work in the position she so thrived in.

36.     Mr. Dela-Riva refused to reinstate Ms. Cordon and give her the required credentials needed to log in to her work system following her medical leave of absence.

37.     Instead, Mr. Dela-Riva pressured Ms. Cordon to resign – instructing her to submit her resignation.

38.     Ms. Cordon refused – she wanted to work.

39.     Mr. Dela-Riva had other plans, though, telling her, "no chica, I'll pay you the two weeks and that's that."

40.     He told her not to worry – that he would tell HR that it was because Ms. Cordon wanted to stay home with her child.

41.     Indeed on November 17, 2017, Mr. Dela-Riva called Human Resources himself –

5

while Ms. Cordon was present – and told Human Resources that Ms. Cordon had resigned.

42.     That same day, Ms. Cordon was briefly given access to the system, but only to check to see if, consistent with Mr. Dela-Riva's promise, that he would at least pay her the "two weeks."

43.     He didn't even pay her the two weeks.

44.     Ms. Cordon had been forced out of her position, despite her stellar record, because she became pregnant, had a child, and required medical leave.

45.     Following her termination, Chase conducted an "exit interview" with Ms. Cordon.

46.     In that interview, Ms. Cordon explained that she felt she had been treated differently and ostracized upon her return from leave.

47.     She explained in her exit interview that she never thought having a baby would end her career at Chase. But it did.

48.     Almost immediately upon return from FMLA, Defendant removed her from the job she held and loved for over a decade.

49.     Other male employees with children were not subject to similar harassment, comments, or treatment.

50.     Defendant treated Plaintiff disparately and less favorably than her male colleagues with respect to the terms and conditions of her employment in a manner that was detrimental to her career development, and ultimately resulting in the loss of her job.

51.     Defendant's actions are in direct violation of federal and state law. As a result of Defendant's unlawful conduct, Ms. Cordon has suffered lost wages and other benefits, loss of professional opportunities, emotional distress, severe embarrassment, pain, suffering, humiliation, fear, anxiety, damage and risk of damage to her career and reputation, damage to her standing in

the community, loss of enjoyment of life, inconvenience, and other, non-pecuniary loses.

## COUNT I
## PREGNANCY AND SEX DISCRIMINATION IN VIOLATION OF TITLE VII

52. Plaintiff realleges Paragraph 1 through 51 and incorporates them as though fully set forth herein.

53. Title VII, as amended by the Civil Rights Act of 1991, makes it unlawful to "discharge any individual, or otherwise discriminate" against any individual "because of such individual's ….sex." 42 U.S.C. 2000e, *et seq*.

54. Additionally, 42 U.S.C. 2000e(k) makes it unlawful for an employer to discriminate against an individual in the terms, conditions, or privileges of employment on the basis of pregnancy.

55. By its conduct as alleged herein, Defendant discriminated against Plaintiff on account of her sex in violation of Title VII and discriminated against her on the basis of her pregnancy in violation of the Pregnancy Discrimination Act.

56. Moreover, Defendant discriminated against Plaintiff because she did not subscribe to the general stereotypes that Defendant believed women should subscribe to, thus fostering a culture and environment of sex and gender stereotyping.

57. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from sex and pregnancy discrimination.

58. As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

59. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count I as follows:

a) Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act, as amended;

b) Enjoin Defendant and all officers, agents, employees and all persons in active concert of participation with them from engaging in any unlawful employment practice;

c) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination;

d) Order Defendant to reinstate Plaintiff to a position equal to or greater than her former position; or, in the alternative, award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

e) Award Plaintiff compensatory damages, including but not limited to the value of all past and future lost compensation and benefits as a result of Defendant's unlawful conduct, and damages for emotional distress and other harm she has suffered as a result of Defendant's unlawful conduct;

f) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

g) Award Plaintiff punitive damages;

h) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

i) Award Plaintiff any and all other available relief as the Court deems just.

## COUNT II
## SEX AND PREGNANCY DISCRIMINATION
## IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

60.     Plaintiff realleges Paragraph 1 through 51 and incorporates them as though fully set forth herein.

61.     The Illinois Human Rights Act makes it unlawful for an employer to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex and pregnancy.

62.     By its conduct as alleged herein, Defendant discriminated against Plaintiff on

account of her sex and pregnancy in violation of the Illinois Human Rights Act.

63.     As a result of Defendant's unlawful conduct, Plaintiff has suffered lost wages and benefits, pain, suffering, emotional harm and humiliation.

64.     Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count II as follows:

a) Declare that Defendant's conduct was in violation of the Illinois Human Rights Act;

b) Enjoin Defendant and all officers, agents, employees and all persons in active concert of participation with them from engaging in any unlawful employment practice;

c) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination;

d) Order Defendant to reinstate Plaintiff to a position equal to or greater than her former position; or, in the alternative, award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

e) Award Plaintiff compensatory damages, including but not limited to the value of all past and future lost compensation and benefits as a result of Defendant's unlawful conduct, and damages for emotional distress and other harm she has suffered as a result of Defendant's unlawful conduct;

f) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

g) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

h) Award Plaintiff any and all other available relief as the Court deems just.

**COUNT III**
**DISCRIMINATION AND RETALIATION**
**IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**

65.     Plaintiff re-alleges paragraphs 1 through 51 and incorporates them as though fully set forth herein.

66.     The Family and Medical Leave Act, specifically 29 U.S.C. §2615, makes it unlawful for an employer to discharge or in any other manner discriminate against any individual for exercising rights under the FMLA.

67.     Additionally, the Family and Medical Leave Act, specifically 29 U.S.C. §2614, mandates that an employee must be returned to the position of employment previously held, or to an equivalent position.

68.     As set forth above, Plaintiff engaged in protected activity under the FMLA, including by exercising her right to FMLA for the birth and care of her child.

69.     Defendant further discriminated and retaliated against Plaintiff where it refused to restore Plaintiff to her position upon her return from leave.

70.     By its conduct alleged herein, Defendant violated the FMLA by discriminating and retaliating against Plaintiff for her exercise of rights.

71.     Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's rights under the FMLA.

72.     Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count III as follows:

a) Declare that Defendant's conduct was in violation of the Family and Medical Leave Act;

b) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in unlawful employment practices

10

under the FMLA;

c) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices consistent with the FMLA to provide equal employment opportunities for all and to prevent retaliation;

d) Reinstate Plaintiff to her previous position;

e) Award Plaintiff the value of all compensation lost and benefits lost as a result of Defendants' unlawful conduct;

f) Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendants' unlawful conduct;

g) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

h) Award Plaintiff liquidated damages;

i) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

j) Award Plaintiff any and all other relief as the Court deems just in the premises.

Respectfully submitted,

/s/ M. Megan O'Malley
Attorney for the Plaintiff

M. Megan O'Malley
Abigail R. Durkin
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
ARDC No. 6243598
momalley@ompc-law.com